## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| MAHPEVANA'HANE LORNE BEARCOMESOUT, | **CV 21-68-GF-BMM** |
| Plaintiff, | |
| vs. | **ORDER** |
| WARDEN MCTIGHE; ASSISTANT WARDEN NELSON; CHAPLAIN JOHNSON; OFFICER MADRID; CORE CIVIC OF AMERICA, | |
| Defendants. | |

Plaintiff Mahpevana'hane Lorne Bearcomesout ("Bearcomesout"), an incarcerated person proceeding pro se, alleges that Defendants violated his First Amendment right to Free Exercise of his Native American religion and his Fourteenth Amendment right to Equal Protection. Bearcomesout's claims stem from the cancellation of three sweat lodge ceremonies at Crossroads Correctional Center ("CCC"). (*See* Doc. 6.) Defendants seek summary judgment on the ground that no constitutional violations occurred. (Docs. 37 & 40.) The Court will grant Defendants' motion for the reasons set forth below.

## LEGAL STANDARD

Summary judgment proves appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact proves material if it impacts the outcome of the case in accordance with governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

All reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Tatum v. Moody*, 768 F.3d 806, 814 (9th Cir. 2014). Nonetheless, the nonmoving party must identify, with some reasonable particularity, the evidence that it believes precludes summary judgment. *See*. Courts exempt *pro se* parties from "*strict* compliance with the summary judgment rules." *Soto v. Sweetman*, 882 F.3d 865, 870 (9th Cir. 2018). Pro se parties are "not exempt[ed] . . . from *all* compliance," however, such as the requirement to identify or submit competent evidence in support of their claims. *Id.*

## BACKGROUND

The following facts are undisputed unless otherwise noted, (*see* Docs. 38, 38-1, 38-2, 47, 47-1, & 48), and viewed in the light most favorable to Bearcomesout, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam). Bearcomesout was incarcerated at CCC in Shelby, Montana at all times relevant to this action, specifically in 2018 and 2019. (Doc. 47 at 1.) Defendant Patrick McTighe is the

former Warden at CCC. *See* Statement of Undisputed Facts ("SUF") (Doc. 38 ₱ 2.) Defendant Chaplain Johnston is the current chaplain at CCC. (*Id.* ₱ 4.) Defendant Officer Madrid is a correctional officer at CCC. (*Id.* ₱ 5.) Defendant CoreCivic owns and operates CCC. (*Id.* at 6.) Defendant Assistant Warden Nelson passed away while the action proceedings were pending. (*See* Suggestion of Death, Doc. 26.)

Bearcomesout is a Native American man and member the Northern Cheyenne Tribe. (*See* Bearcomesout Decl., Doc. 47-1 ₱ 4.) He practices the traditional Native American spirituality of the Northern Cheyenne. (*Id.* ₱ 5.) Sweat lodge ceremonies represent a cornerstone of Bearcomesout's religion. (*Id.* ₱ 9.) CCC generally held sweat lodges once per week on Sundays during the relevant time period. (Doc. 48 ₱ 5.)

In relation to religious services, CCC applies CoreCivic Policy 20-4. (*See* Doc. 38-1 at 16–23.) At the time of Bearcomesout's incarceration at CCC, the facility offered the following Native American religious spiritual and ceremonial activities: sweat lodge ceremony, pipe ceremony, drum group, and talking circle. (*Id.*)  The sweat lodge ceremony is the only allowable religious activity at CCC that "may not be under direct supervision and line of sight of a correctional officer or RAC staff member."  (*Id.* at 16.)  While a correctional officer may monitor activities in the sweat area, they may not enter the sweat lodge. (*Id.* at 20; *see also* Doc. 48 ₱ 1.)  Accordingly, CCC adopted additional guidelines to clarify the relevant

3

procedures surrounding sweat lodge activities. (Doc. 38-1 at 16.) The guidelines

provide that the sweat lodge ceremony would generally occur on a weekly basis and

could be cancelled when:

1. The temperature in degrees combined with the wind in miles per hour
   reaches a wind chill factor of 0 degrees or below;

2. There are fire bans by the State, County or DOC authorities due to
   high fire danger conditions; or

3. There are facility lockdowns, emergencies, gang activity, or other
   documented security concerns.

(*Id.* at 22.) The guidelines also provide that if sweat lodge ceremonies have been

cancelled for two or more consecutive weeks, consideration will be made to allow

for a substitution day based on the facility schedule. (*Id.*)  The Warden possesses

discretion to alter or depart from the guidelines should they "determine[] that

security interests justify such action." (Doc. 38 ⁋ 14; *see also* Doc. 38-1 at 16.) CCC

follows Montana State Prison Procedure 5.6.1., which outlines MSP's religious

programming guidelines. CCC aims to extend programming and practices consistent

with that offered at MSP. (Doc. 38-1 at 2.)

CCC cancelled sweat lodge ceremonies scheduled for July 15, 2018, and

September 22, 2019, due to fire danger determined by Toole County, Montana. by

CCC cancelled a sweat lodge ceremony scheduled for September 29, 2019, due to

inclement weather and a winter storm warning determined by Toole County. (Doc.

38 ⁋⁋ 16–18); *see also* (Doc. 38-1 at 3, ⁋⁋ 10–11.) A talking circle, held indoors, was

4

scheduled as a replacement activity for the cancelled sweat lodge on September 29, 2019. (Doc. 38 ⁋ 19.) Additionally, following the two consecutively cancelled 2019 sweat lodge ceremonies, CCC held a make-up sweat lodge ceremony for the general population on October 4, 2019. (*Id.* ⁋ 20.) Bearcomesout attended both the talking circle and the make-up sweat lodge ceremony. (*See* Doc. 38-1 at 296, 340.) Bearcomesout contends that the three sweat lodge ceremonies at issue were not cancelled for legitimate reasons and CCC's proffered bases prove pretextual. Bearcomesout claims that the cancellations violated his First Amendment right to free exercise of his religion.

A prearranged indoor event with a national Christian group called "Rock of Ages" was held at CCC on October 8, 2019. Extra security personnel were present to accommodate this event. (Doc. 38, ⁋ 22.)  Bearcomesout claims that accommodations being made for the Rock of Ages Christian event, in the wake of cancellation of Native American sweat lodge ceremonies, establishes a violation of his right to equal protection under the Fourteenth Amendment.

Bearcomesout spoke with CCC staff and filed informal grievances with CCC personnel following the cancelled ceremonies. (*See* Doc. 47-1 at 4, ⁋ 20; Doc. 38 at 6, ⁋ 24; Doc. 38-2 at 15–22.) CCC staff offered a time to meet with Bearcomesout in order to discuss the grievances further. (Doc. 38 ⁋ 24; Doc. 38-2 at 21–22.)

Bearcomesout filed his original Complaint Court in June 2021. (Doc. 2). He

filed an Amended Complaint on July 12, 2021. (Doc. 6.) Defendants filed their motion for summary judgment on December 30, 2022. (*See* Docs. 37, 38, 240.) Bearcomesout responded on March 28, 2023, after the Court provided several extensions of time. (Doc. 47.) Defendants replied on April 20, 2023. (Doc. 49.)

## ANALYSIS

Defendants contend that they are entitled to summary judgment as a matter of law on Bearcomesout's First Amendment Free exercise Claim. Defendants assert that the Native American religious practices guidelines and policies at issue prove rationally related to legitimate penological interests. Defendants also argue that Bearcomesout's Fourteenth Amendment Equal Protection claim fails because CCC provided Bearcomesout a reasonable opportunity to practice his religion.

### i.    First Amendment Claim.

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof[.]" U.S. Const. amend. I. The First Amendment applies to the States through the due process clause of the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Incarcerated people retain their First Amendment rights, including the free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987).

"The free exercise right, however, is necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals

6

or to maintain prison security." *McElyea v. Babbitt*, 833 F.2d 196, 197 (9th Cir. 1987) (per curiam). "[P]rison regulations alleged to infringe constitutional rights are judged under a 'reasonableness' test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights." *O'Lone*, 482 U.S. at 349. An incarcerated person must show that their claim involves  a sincerely held religious belief that is consistent with their faith for the Free Exercise Clause to apply. *Shakur v. Schriro*, 514 F. 3d 1114, 1119 (9th Cir. 2013).

Under the First Amendment's Free Exercise Clause, "[w]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Under *Turner*, courts consider whether (1) there is a "valid rational connection" between the challenged regulation and the legitimate governmental interest put forward to justify it; (2) whether alternative means of exercising the right in question are available; (3) what impact the accommodation of this exercise would have on prison personnel and resources; and (4) whether the prison regulation is unreasonable because obvious, non-obtrusive alternatives exist. *Id.* at 89–90.

As a preliminary matter, the record reflects that Bearcomesout's Native American faith constitutes a sincerely held religious belief. Bearcomesout attended 57 sweat lodge ceremonies from March 30, 2018 to November 24, 2019. (Doc. 38-1 at 24–357). CCC cancelled 13 sweat lodge ceremonies during this time period. (*Id.*

7

at 47–296.) CCC held alternative programming, such as a pipe ceremony or talking circle, in these instances. (*Id.*) Bearcomesout attended 7 of these substitute events. (*Id.*) Bearcomesout also regularly attended other Native American religious activities, including drum group, pipe ceremony, special pipe ceremony, and native recording sessions. Bearcomesout participated in 111 such ceremonies during the relevant time period. (*Id*. at 43–356.)

Bearcomesout also assisted in performing maintenance on the sweat lodge itself. (*Id*. at 112.) Bearcomesout learned to "keep fire" as a child, meaning that he tended to the fire that heated rocks sweat lodge ceremonies. (Doc. 47-1 ⁋ 7.) Bearcomesout also learned to build a sweat lodge. (*Id.*) Bearcomesout's father gave him the right to "pour" or run a sweat lodge ceremony when he was in his 20s. (*Id.* at ⁋ 8.) Bearcomesout was the pipe carrier at CCC, which involved certain responsibilities, including preparation for the religious ceremonies. (*See* Doc. 6-2 at 1.) Defendants do not dispute sincerity of Bearcomesout's beliefs. The Court will proceed to analyze whether CCC's policy at issue proves reasonably related to a legitimate penological interest under *Turner*.

Under the first *Turner* factor, Defendants bear the burden of proving the existence of a "rational connection" between the challenged regulation and a legitimate government interest. The government interest must be legitimate and applied in a neutral fashion. *Turner*, 482 U.S. at 98–99. Legitimate penological

8

interests include "the preservation of internal order and discipline, the maintenance of institutional security against escape or unauthorized entry, and the rehabilitation of prisoners." *Procunier v. Martinez*, 416 U.S. 396, 412 (1974).

Bearcomesout appears not to challenge the existence of the CCC policy itself, which sets forth when a sweat lodge ceremony may be cancelled. Bearcomesout instead challenges the application of the policy on three separate occasions. Bearcomesout claims specifically that on two of the two occasions at issue, there was not a fire ban in place that would have prohibited controlled fires. Bearcomesout argues that on the third occasion there was no storm warning that would have made the sweat lodge ceremony unsafe. Bearcomesout disputes the application of the policy in these specific instances. Bearcomesout at least tacitly acknowledges that a rational relationship between CCC's interest and the regulation at issue.

Defendants affirmatively argue that this factor favors them. Defendants assert that the restrictions imposed in the guidelines serve to maintain safety and security within the prison. Defendants contend that the restrictions prove rationally related to the facility's legitimate interest in preserving internal order and promotion institutional security, while simultaneously providing Native Americans the opportunity to practice their religion. (Doc. 40 at 8–9.)

The Court agrees. CCC's policy authorizing cancellation of a sweat lodge due to extreme cold, existing fire bans due to high danger conditions, or institutional

security concerns all legitimately relate directly back to the safety of staff and incarcerated people, as well as the overall security of the facility. A rational relationship exists between the sweat lodge cancellation policy and the legitimate penological interest of CCC in maintaining order and security. Accordingly, the first *Turner* factor weighs in Defendants' favor.

The Court must examine whether alternative means of religious exercise were open to Bearcomesout under the second *Turner* factor. Defendants point out that when CCC cancelled the September 29, 2019, sweat lodge ceremony, it offered a talking circle in its place. CCC subsequently offered a full, make-up sweat lodge ceremony on October 4, 2019. CCC offered its regularly scheduled sweat lodge ceremony on October 6, 2019, to account for the two cancelled ceremonies at the end of September. Defendants argue that CCC policy did not require staff to make these accommodations, but that Chaplain Johnson and others elected to do so. CCC maintains that it provided alternative means of religious practice to Native American incarcerated people. Bearcomesout does not directly dispute this argument. Bearcomesout instead highlights that a talking circle is not equivalent to a sweat lodge ceremony, because it represents more of a social gathering. (*See* Doc. 47-1 ¶ 11.)

The Court observes that CCC cancelled additional sweat lodge ceremonies on July 15, 2018; July 22, 2018; August 12, 2018; and August 19, 2018. (Doc. 38-1 at

47, 53, 61, 67.) CCC offered a pipe ceremony to substitute for each of these cancelled ceremonies. (*Id*.) Bearcomesout indicates that CCC also cancelled sweat lodge ceremonies on July 7 and August 26, 2018. (Doc. 47-1 ⁋ 16.) Bearcomesout only challenges the cancellation of the July 15, 2018, ceremony. He does so because the printout he viewed from Chaplain Johnson for that specific date was different in appearance than the burn ban notice print-outs he had viewed for the other dates. Bearcomesout fails to challenge the legitimacy or relation of the policy allowing for cancellation of the sweat lodge ceremony under certain conditions, here due to fire danger, or the substitution of a pipe ceremony in place of the cancelled sweat lodge ceremony. This failure underscores the fact that alternative means of religious expression remained open to Bearcomesout and others. Moreover, Bearcomesout's acknowledgment that sweat lodge ceremonies were cancelled on the other 2018 dates for a legitimate basis, underscores the basis of the policy as it relates generally to conditions and policies at CCC.

In the summer and fall of 2019 CCC again cancelled sweat lodge ceremonies due to weather conditions. Only one sweat lodge ceremony took place from July 28, 2019 to September 29, 2019. (Doc. 38-1 at 249–315.) The ceremony took place on September 15. (*Id.*) Aside from the September 29, 2023 ceremony, CCC held a pipe ceremony in place of each cancelled sweat lodge ceremony. (*Id*.) As set forth above, CCC held a talking circle on September 29, 2019, and a make-up sweat lodge

11

ceremony on October 4, 2019.  Bearcomesout challenges only the 2019 cancellations that occurred later in September.

Bearcomesout argues that, based upon his training and experience, a sweat lodge ceremony could have been held safely on these two dates and he did not believe a burn ban to be in effect.  (*See* Doc. 47-1 ⁋⁋ 22–23.)  Bearcomesout levels no challenge against the validity of the policy itself. Bearcomesout fails to demonstrate that CCC denied him all means of religious expression. He retained the ability to participate in other Native American religious services. *See O'Lone,* 482 U.S. at 351–52; *see also Mayweathers v. Newland*, 258 F. 3d 930, 938 (9th Cir. 2001).  Accordingly, this factor also tips in Defendants' favor.

Under the third *Turner* factor, the Court must examine what effect accommodating the sweat lodge ceremony would have had on guards, other incarcerated people, and on the allocation of prison resources. Defendants contend that they properly considered the impacts of accommodation and the potential "ripple effects." As set forth above, CCC provided accommodation in offering alternative Native American services in lieu of the sweat lodge, as well as a make-up sweat lodge ceremony. Defendants assert that had they allowed the sweat lodge ceremonies to proceed as scheduled, with knowledge of inclement weather, fire restrictions, or other attendant security concerns, they would have created heightened safety risks to incarcerated people and staff. (Doc. 40 at 9–10.) CCC

administration considered the potential security risks in allowing the sweat lodge ceremonies to proceed in dangerous conditions and determined that the relevant guidelines and policy were necessary to maintain prison safety. (*Id.*)

Bearcomesout does not dispute this contention directly. Bearcomesout persists in his argument that the design of the sweat lodge's firepit and layout of the surrounding area would have allowed for the ceremonies to occur and presented less danger than a recreational cooking/campfire. (Doc. 47-1 ¶ 28.) Bearcomesout has not provided evidence, however, to refute Defendants' contentions so as to create a genuine issue of material fact. Moreover, the Court may not substitute its judgment on "difficult and sensitive matters of institutional administration." *Block v. Rutherford*, 468 U.S. 576, 588 (1984). The Court will defer to the expertise of CCC relative to the impacts of accommodation as it relates to incarcerated people and the facility's allocation of resources. This factor, too, weighs in favor of Defendants.

The final *Turner* factor requires the Court to examine whether there is an absence of ready alternatives or the existence of obvious alternatives. In relation to this factor, prison officials do not bear the burden of disproving the availability of alternatives. *OLone*, 482 U.S. at 350. CCC routinely offered alternatives to the sweat lodge ceremony during the relevant time period. These alternatives include the September 29, 2019, talking circle and the October 4, 2019, make-up sweat lodge ceremony. CCC routinely offered pipe ceremonies in place of sweat lodge

ceremonies, particularly during fire season. The record reveals that Defendants offered to meet with Bearcomesout to discuss his grievances and work with Native American incarcerated people at CCC to address their concerns. Defendants argue that the availability of alternatives for the cancelled sweat lodge ceremonies cuts in their favor. The Court agrees.

The Court concludes that the balance of the *Turner* factors weigh in favor of Defendants. The Court determines that CCC guidelines and policies at issue prove rationally related to a legitimate penological interest, particularly to the safety and security of incarcerated people and staff. The Court will grant summary judgment in Defendants' favor on Bearcomesout's First Amendment claim.

### ii.     Fourteenth Amendment Claim

The Equal Protection Clause requires the State to treat all similarly situated people equally. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985).  The Equal Protection Clause protects incarcerated people from intentional discrimination on the basis of their religion. *Cruz v. Beto*, 405 U.S. 319, 321–22 (1968), *abrogated on other grounds by Shakur*, 514 F.3d at 884–85. "This does not mean . . . that all prisoners must receive identical treatment and resources." *Hartmann v. Calif. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013) (citations omitted). To establish an equal protection violation, an incarcerated person must present evidence of discriminatory intent. *See Washington v. Davis*, 426 U.S. 229, 239–40 (1976); *see*

*also Hartmann*, 707 F.3d at 1123.

Bearcomesout fails to address his Fourteenth Amendment claim in his response to Defendants' summary judgment motion. (*See generally* Doc. 47.) Defendants contend that they afforded Bearcomesout numerous accommodations that he failed to account for, including the talking circle and make-up sweat lodge. Bearcomesout grieved the cancellation of the sweat lodge ceremonies and alleged that other groups, including the Christian Rock of Ages program, were able to partake in their scheduled events. CCC responded by pointing out that the Rock of Ages was a predetermined event organized by a national group and was held inside the prison with extra security personnel in place.  (Doc. 40 at 12–13)

Beyond his theory regarding the Rock of Ages program, Bearcomesout provides no evidentiary support for Defendants' discriminatory intent. Bearcomesout has produced no evidence of intentional discrimination based upon his Native American beliefs. Bearcomesout's Fourteenth Amendment claim fails. The Court will grant summary judgment in Defendants' favor on Bearcomesout's Equal Protection claim.

## ORDER

Based on the foregoing, **IT IS ORDERED** that Defendants' motion for summary judgment (Doc. 37) is **GRANTED.**  The Clerk is directed to enter judgment in favor of Defendants and close the case file.

DATED this 19th day of July, 2023.

_____
Brian Morris, Chief District Judge
United States District Court